EXHIBIT "A"



# REPUBLICA DE COLOMBIA
MINISTERIO DE RELACIONES EXTERIORES

## APOSTILLE
(Convention de La Haye du 5 Octobre 1961)

Libertad y Orden

**Pais:** REPUBLICA DE COLOMBIA
(Country: - Pays:)

**El presente documento público**
(This public document - Le présent acte public)

**Ha sido firmado por:** YEPEZ ZAMBRANO LUIS FERNANDO
(Has been signed by: - A été signé par:)

**Actuando en calidad de:** TRADUCTOR OFICIAL
(Acting in the capacity of: - Agissant en qualité de:)

**Lleva el sello/estampilla de:** TRADUCTOR E INTERPRETE OFICIAL
(Bears the seal/stamp of: - Est revêtu du sceau de / timbre de:)

**Certificado**
(Certified - Attesté)

**En:** BOGOTA D.C.
(At: - A:)

**El:** 2/15/2008
(On: - Le:)

**Por:** APOSTILLA Y LEGALIZACIONES
(By: The Ministry of Foreign Affairs of Colombia - Par: Ministère des Affaires Étrangères de la Colombie)

**No:** AICP64813255
(Under Number: - Sous le numéro:)

Digitally Signed by:
Ministerio de Relaciones Exteriores de Colombia
SAUL GIOVANNI PEREZ GUTIERREZ
Reason: DOCUMENT AUTHENTICITY
Location: Bogotá - Colombia
Date: 15 de Febrero de 2,008

**Firma:** (Signature:)

**Nombre del Titular:** EPCAMS COMBITA BOYACA
(Name of the holder of document: - Nom du titulaire:)

**Tipo de documento:** TRADUCCION INFORME
(Type of document: - Type du document:)

**Número de hojas apostilladas:** 17
(Number of pages: - Nombre de pages:)

8315040427491053

La autenticidad de esta apostilla puede ser verificada en el Registro Electrónico que se encuentra en la siguiente página web:
The authenticity of this Apostille may be verified by accessing the e-Register on the following web site:
L'authenticité de cette Apostille peut être vérifiée en accédant l'e-Registre sur le site web suivant:

**www.cancilleria.gov.co/apostilla**

## PROSECUTOR'S GENERAL OF THE NATION

Bogotá, February 7, 2008

Writ No. 431

Mrs.

CARMEN CECILIA ACERO MADERO

Calle 34 S No. 34 C 10

Bogotá

Cordially greeting:

In accordance with your request to the Prosecutor Delegated for Prevention in Human Rights and Ethnical Matters, penitentiary and Prison Affairs Group, and as per petition of the Delegate to our office, attached you will find true copy of the original report of visit to EPCAMS of Combita – Boyaca, performed by that office.

Sincerely yours,

MAGALY ARAUJO MESTRE

Chief, Public Attention Center Division CAP

Division Centro de Atención al Publico Ext. 20100 decap@procuraduria.gov.co

Cra 5 N 15-60 Piso 1 PBX 3360011 www.procuraduria.gov.co

I hereby certify that I am fluent and competent in both, the English and the Spanish languages, and that I have made the above translation from the annexed document in the Spanish language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability and belief.

**LUIS FERNANDO YEPEZ, Esq., Official Translator and Interpreter**

Universidad Nacional de Colombia – Bogotá, D.C., Colombia

Resolution N. 1029, Ministry of Justice of Colombia, July 8, 1991.

Tv. 17 N. 98-45 Apt 1103, Bogotá, D.C., Colombia, S.A.

Tel. 7028548 – Mobile: 313-829824  -  aaababel@hotmail.com

**APOSTILLE: AICI144253984**

www.cancilleria.gov.co/apostilla



# PROSECUTOR'S GENERAL OFFICE OF THE NATION

Prosecutor Delegated for Prevention in Human Rights and Ethnical Matters

Report of visit of special inspection to the Maximum and Middle Security Penitentiary and Prison of Combita (Establecimiento Penitenciario y Carcelario de Alta y Mediana Seguridad de Combita).

| Visited establishment: | Maximum and Middle Security Penitentiary and Prison of Combita (Establecimiento Penitenciario y Carcelario de Alta y Mediana Seguridad de Combita) |
|---|---|
| Date of Visit: | October 25, 2007 |
| Officer who made the visit: | Romulo Murillo Rubiano and Margarita Paramo Calderon (Counselors of the Penitentiary and Prison Matters, Prosecutor Delegated for prevention in Human rights and Ethnical Matters) with the support of Oliverio Castañeda Molina, Esq., officer of the Regional Prosecutor's Office of the State of Boyaca. |

The inspection visit made is of the special type and it resulted fro the problems that had arisen (disobedience of the individuals requested in extradition an located in Section 7) and of petitions raised by relatives of the inmates and by the President of the Fundacion para los Derechos de los Colombianos pedidos en Extradición DECOPEX (Foundation for the Rights of Colombians requested in Extradition), who refer that such situation emerged due to the lack of procedural guarantees and the violation to the fundamental rights regarding the living conditions of the inmates.

In interview with the inmates, they refer that their organization originated due to the permanent irregularities performed by the Colombian authorities in the extraction case proceedings, when not taking into account the cover-ups made by the police authorities and the D.A.S., for involving people who have nothing to do with the crimes they are accused of (presumption of innocence), breaching the due process, the right of defense (appointing defense attorneys of the state by the Supreme court of Justice or public defense attorneys, without these attorneys performing the technical defense), the equality in front of the law, and the territoriality and extraterritoriality rights, among others.

In accordance with the preventive functions laid-down in the Political Constitution and Decree Law 262 of 2000 and specially the protection of human rights of people deprived from freedom and confined in the different prisons, the commission focused on the verification of the living conditions in the said Section 7.

As methodology of the visit, the members of the commissions requested an interview with the director of the prison, Major Elver Gerard Rosas Suarez (D), with the intend of reporting the reason of the visit, but he was presiding over the Human Rights Committee within the penitentiary, the meeting was held with the Surveillance Committee, LC. Libardo Acosta Bejarano, who appointed an officer from the custody and surveillance body to accompany the commission in the tour. In development of the visit officer of the prison were interviewed (guards and administrative personnel of the sanitation area) and some inmates; the facilities were inspected in a general manner, among others, the health area, pointing out the principal health situations found by the Commissions that demanded immediate solution, which were reported to the people in charge and who replied they would proceed to review and provide the corresponding solutions.

Below we analyze the principal observations of the commissions, through topics and formulation of the corresponding recommendations.

I.      General Description of Section 7 and its functioning.

The Section is located in the internal part of the high security prison; in it there is the Guard Command where 2 guards work; it has two doors, one for entering the area and another with gate for accessing the patio; between the two doors are located on one side the store and on the other the classroom; the Section is distributed as follows: A large space for the inmates during the day hours, with a covered part for common dining rooms (concrete), common bathrooms contiguous to the dining room; a television lounge (deteriorated chairs) and another space for taking the sun, playing soccer, volleyball; also reading spaces (providing with furniture), which in accordance with the information provided by some inmates, it was formerly the library (today some inmates are located there9; a room of health attention (stretch, desk, empty shelves 1) an internal hut (empty).

---

1 It is clarified that the shelves remain without medication due security reasons. One of the inmates is in charge of the first aid kit 8medication donated by the inmates, when they leave from the penitentiary).

Case 1:04-cr-20257-DMM   Document 107-22   Entered on FLSD Docket 07/23/2008   Page 6 of 32

The cells are located on 3 floors, with two aisles each, with 102 cells and each with two concrete plates that are used for beds.

On the date of the visit, the daily report was given, corresponding to 181 inmates distributed as follows:

| FLOOR 1 | A | 25 | 50 |  |
|---|---|---|---|---|
|  | B | 25 |  |  |
| FLOOR 2 | A | 35 | 70 | TOTAL 181 |
|  | B | 35 |  |  |
| FLOOR 3 | A | 31 | 61 |  |
|  | B | 30 |  |  |

The locative capacity of Section 7 is for 204 places and as mentioned above, the total number of inmates is 181, which indicates that there is no accumulation.

II.     **Priority Problem Points found by the Commission.**



The report contains the most significant problems, because many of the particular situations (petitions of the inmates and others easily solvable) were reported to the penitentiary authority, in order to facilitate the processing urgently[2]. The contents of the documents herein reflect an execution of priorities facing the greatest problems observed by the PGN Commission during the inspection visit. Below we present the principal remarks grouped per topics. Each topic counts with a series of duly outlined recommendations addressed to specific authorities for seeking a solution to the problems found.

The report is aimed at serving as a work guide for the execution of a preventive work of the PGN in human rights matters at Section 7 of the EPCAMS of Combita (Maximum and Middle Security Prison of Combita). The application of the recommendation will be followed by the Regional Prosecutor's Office of the State of Boyaca and by the Penitentiary and Prison Matters Group of the Prosecutor Delegated for the Prevention in Human Rights and Ethnical Affairs matters.

---

[2] At the end of the visit the Commissions met with the Director of the prison for informing about the living conditions of the inmates and of their petitions.

## A. Infrastructure of the pavillion

During the visit tour, we observed that various bathrooms located in the yard (next to the dining room), were out or order (damaged) without water(restriction), which produces bad smell and make them look dirty. This does not just affect the good operation of the facilities in general, but it disturbs the peace and health of the people who are at the dining room (space used not only for eating, but for remaining sitting during the day and due to the lack of chairs). The inmates reported their inconformity and uneasiness, due to the location of the bathrooms in this sector and therefore they requested to the commission to process before the penitentiary authority the solution to the inconvenient, whether moving the bathrooms or the dinning room to another place or permitting the access to the bathrooms located in the cells.

Taking into account that the inmates complained for the scarce supply of water and the lack of pressure in the showers located in each one of the corridors, we asked the personnel in charge of the administration and scheduling of the water, and in the first place they reported that the water supply is rationalized in the cells, not in the patios (there was no water in the patio on the day of the visit). Facing this situation the officers proceeded to give us a demonstration of the water pressure and the supply of water in the

showers, where we verified that the water did not reach any of the showers of the third floor and some of the second floor. Therefore, we recommended the personnel in charge to verify the situation and adopt the corresponding corrective measures in order to guarantee the right to the use of water.

On the other hand, various cells of some floors were reviewed, finding that some cells had humidity problems (specially those of the first floor), which has made the mattresses, sheets and covers to get humid, a situation that affects the health of the people dwelling there. Likewise, the bathrooms of some cells are not in good operation conditions (Cell 1). These situations were reported to the penitentiary authorities.

Facing the above facts, it is convenient to remember the guidelines of the minimum rules for treatment of the inmates, rule 13:

*"The bathroom and shower facilities must be appropriate so that each inmate will be able to take a bath at a temperature adopted to the climate and as frequently as required for general hygiene in accordance with the season and within the geographic region, but at least once a week in a moderate climate".*

In the same manner, it is noteworthy to remind what is stated in the Manual for the penitentiary personnel. 3.

"In addition, it is necessary to adopt the necessary measures so that the inmates will eat in appropriate circumstances..." (...) It is mandatory that the inmates should have regular access to drinkable water. These facilities will be separated from those used for a toilet."

**Recommendations:**

- To the General Director of the INPEC: To process before the Fondo de Infraestructura Carcelaria (FIC), (Penitentiary Infrastructure Fund), the review of the work construction, specially the bathrooms, in order to provide a solution to the separation of the bathrooms from the dinning room.
- To the General Director of the INPEC and to the Director of EPCAMS: to seek alternatives for the solution to the separation of bathrooms and the dinning room, while the FIC makes the corresponding fittings.
- To the General Director of the INPEC: To process the resources for the fitting of the bathrooms of the year and of the affected cells.

- To the General Director of the INPEC and of the EPCAMS: To guarantee the inmate's right to the water, supplying this good timely and effectively at all places of the prison, mainly in the showers of the mentioned corridors. Likewise, to perform all the required proceedings so that situations as those mentioned in the report will not happen again.
- To the Director of the Prison: to order the pertinent for providing mattresses changing those damaged by the humidity.

### A. Complains and Petitions of the Inmates Population:

The commission received from some inmates, the following complains, related to the living conditions of the Section. It is convenient to clarify in the report herein, that since October 23, 2007, the starvation strike was suspended.

- Health: scarcity in the supply of medications and delay in the process for validating the medical formulas released by the health professionals (private). Likewise, they report that health attention is insufficient.

---

3 Andrew Coyle, Penitentiary Studies International Center. "Penitentiary administration within the context of human rights". Page 47.



The presence of psychologists at the time of entrance of the inmates to the prison and in the patios is requested.

- Health Prevention: It is informed that a single shaving machine is being used for shaving all people in the patio and without due asepsis, which has generated fungus in the inmates population of the patio. The inmates require information on personalized prevention programs, for the one presented in the last few days was transmitted in a loud speaker and it wasn't understandable.
- Water: Deficient supply o water, both for consumption as well as for personal hygiene (water does not reach the showers)
- Bathrooms: Uneasiness due to the closeness of the bathrooms to the dinning room, due to dignity conditions. Also, some bathrooms are not in good operating conditions.
- Food: Variety of products in the stores is requested (inclusion of vegetables, fruits, chicken). Also, the inmates have requested to study the possibility of allowing the entrance to the cell of the chicken leftovers they buy during the date of visit, as for avoiding the waste of this food.

Likewise, the inmates request that to the value assigned to them for daily consumption ($29.000 col. Pesos) not to accumulate the purchasing of items in the store with the purchase of cards for telephone calls.

- Patio: Inconvenient with the rain, because despite of having a roof on the dining room part, when it rains the eater penetrates through the sides, flooding them and getting the inmates wet, because they have no other shelter. Therefore they request the possibility of covering more spaces, improving the existing roof and opening the corridors for protecting against. These events.

Likewise, the request the fixing of the chairs allocated to the TV lounge. Also, authorization for entering DVD movies, for the last DVD was authorized; they have not been able to use it due to the lack of authorization of the movies.

In addition, strict fulfillment of the agreement reached with the penitentiary administration related to the transfer of people to the general soccer field of the prison (once a week) is requested.



It is further request the location of books in the place allocated for the library of the patio, because this place is not complying with its duties due to the lack of material.

- Penitentiary Treatment: The patio does not have special and appropriate places for the accomplishment of educational and labor activities. Therefore we request to locate tents for the people who are carrying out hand or sewing activities in order to avoid climate hazards. In addition. Authorization is requested for the entrance of sufficient material for the performance of these activities and the location of the gym.
- Booths: The concern for sharing the booths with the inmates personnel from other Sections was reported, because this does not guarantee privacy, and because many of them have been blackmailed at this place or in the way to it through the delivery of writings, therefore they request the fitting of an exclusive space for the individuals requested in extradition, due to safety reasons.
- Visits:
- It is request it to study the possibility of granting more time for the spouse visit, because the time granted is not enough (30 minutes).

- Guards: It was reported that searches (seized) are been made in the cells at midnight or the dawn hours, destroying the personal use items and throwing onto the floor food and cloths (bed and personal) and other items owned by them (photographs and written documents). Also, the guard enters the cells requesting personal information 4.

- Public Defense Attorney: Several inmates stated their discontent because the state appointed defense attorneys or public attorney appointed by the Supreme Court of Justice and the Public Defense Attorneys are not complying with their duties within the corresponding cases, therefore, they request to be kept duly informed by their defense attorneys 5.

In accordance with the above, the inmates have complained because at the time of delivering correspondence, they find it opened and without some of the items sent to them (photos). It is clarified that the correspondence is not opened in the presence of the interested party (inmate).

To the Commission it was evident the leisure in which the inmates remain. Therefore, the commission requested the Direction of the prison to carry on the

necessary proceedings in order to guarantee an appropriate treatment to the inmate population.

In the same sense, each complain and request mentioned above was reported to the Direction for its study and processing in order to guarantee the rights of the inmate population.

The Direction informed the commission that it would carry out all the pertinent proceedings in order to guarantee the fundamentals rights.

It is pertinent to outline that the Regional Prosecutor's Office of the State of Boyaca, has made strict follow-up to the above mentioned situation. 6. Annex. Contact Data

---

4 Complain attached.

5 List attached

6 Report of the Regional Prosecutor, dated October 25, 2007

---

## Key Contacts in the Penitentiary

| POSITION | NAME | TELEPHONE |
|---|---|---|
| DIRECTOR | MAJOR, ROSAS SUAREZ, ELVER GERARD | 7570181 |