1  IN THE UNITED STATES DISTRICT COURT
   FOR THE MIDDLE DISTRICT OF FLORIDA
2  OCALA DIVISION

3  Case No. 5:07-cr-19-Oc-10GRJ

4  July 22, 2010
   Ocala, Florida
5

6  UNITED STATES OF AMERICA,

7  Plaintiff,

8  vs.

9  MIGUEL VILLARREAL-ARCHILA and
   MANUEL ENRIQUE TORREGROSA-CASTRO,
10

11  Defendants.

12  _____/

13

14

15  TRANSCRIPT OF SENTENCING HEARING
   BEFORE THE HONORABLE WM. TERRELL HODGES,
16  SENIOR UNITED STATES DISTRICT JUDGE

17

18

19

20  Appearances of Counsel:

21  For the Government:

22  **Ms. Julie Hackenberry Savell**
   U.S. Attorney's Office
23  300 North Hogan Street
   Jacksonville, FL  32202
24  904/301-6300

25

Appearances of Counsel (continued):

    For Defendant Miguel Villarreal-Archila:

        **Mr. Joel M. Denaro**
        Law Office of Joel M. Denaro, PA
        Suite 400
        777 Brickell Avenue
        Miami, FL  33131
        786/356-9146

    For Defendant Manuel Enrique Torregrosa-Castro:

        **Mr. William Riley Barzee**
        Law Office of William Barzee
        Suite 1200
        169 East Flagler Street
        Miami, FL  33131
        305/374-3998

Reported by:      Dennis Miracle, Official Reporter

*Dennis Miracle, Official Reporter - 352-342-0414*

P R O C E E D I N G S

THE COURT: The matter we have on the calendar this morning is a sentencing hearing in the case of the United States against Miguel Villarreal and Manuel Enrique Torregrosa, Number 07-criminal-19-Ocala.

I note Ms. Savell is here for the United States. The defendants are represented by Mr. Denaro --

MR. DENARO: Good morning, Your Honor.

THE COURT: Good morning, Mr. Denaro -- and Mr. Barzee.

MR. BARZEE: Good morning, Your Honor.

THE COURT: Good morning.

And the defendants are seated with their respective lawyers at counsel table.

We also have present Mr. Leonor as interpreter. And I understand, Mr. Leonor, we need to administer to you the interpreter's oath.

Madam Clerk?

*** THE INTERPRETER was sworn by the Deputy Clerk ***

THE INTERPRETER: My name is Jessie Leonor, L-E-O-N-O-R. Good morning, Your Honor.

THE COURT: I have before me, counsel, the presentence reports of the probation officer as it pertains to each of these defendants respectively.

It appears that both last made an appearance before

Magistrate Judge Jones on May the 15th of this year at which time each of them, pursuant to a formal written plea agreement -- separate agreements -- that each had made with the United States, the defendants entered pleas of guilty to the offense charged in Count One of the Indictment, an offense involving an alleged conspiracy to distribute cocaine.

And after conducting the proceedings required by Rule 11, the Magistrate Judge made a Report and Recommendation that the Court accept the pleas of guilty tendered by both defendants.

Thereafter, in the absence of any objection, the Court did subsequently accept the pleas of guilty by each of these defendants, adjudged both of them to be guilty, and the probation officer proceeded to conduct his presentence investigation and prepare and submit to the respective parties a copy of his presentence report, which has since been delivered to me -- each of the reports, that is -- to which the probation officer has affixed the addendum required by Rule 32 reflecting that the United States has no objections to either report. And in the case of Mr. Villarreal, the defendant has made no objection to the report as it pertains to him.

In the case of Mr. Torregrosa, there was a suggested correction -- I think it's more aptly described that way than an objection -- concerning the defendant's custodial

status.  It's the defendant's contention that he was taken

into custody in Colombia on May 3, 2007, and has been detained

since that time coming into the custody of the United States

on or about -- let me restate that.

He was arrested in Colombia on May 12, 2006, as I

understand it, and came into the custody of the United States

apparently on or about May 3, 2007.  And that is now disclosed

as a part of the presentence report.  And the significance of

that, of course, will be for the Bureau of Prisons to

ascertain or verify and determine what credit, if any, the

defendant may be entitled to receive against whatever sentence

is imposed here this morning.

And I would assume, Mr. Barzee, that that satisfies

your interest in the matter.

MR. BARZEE:  It does, Your Honor.  Thank you.

THE COURT:  Thank you.

All right.  Then there being no objections to the

presentence report, or reports, I will adopt and confirm each

of them as the Court's findings of fact and conclusions of law

relating to the imposition of sentence in these cases.

More specifically I find, as did the probation

officer, that the base offense level under the sentencing

guidelines applicable to each of the defendants is level 38.

Neither is subject to any enhancements by way of specific

offense characteristics or the like, and both are entitled to

1  an aggregate reduction of three offense levels on account of

2  their acceptance of responsibility producing for each of the

3  defendants, then, a total offense level of 35.

4        The probation officer then determined as to both

5  defendants that neither has any prior criminal history so that

6  both are in criminal history category number one.

7        And at offense level 35, criminal history category

8  number one, insofar as the sentencing guidelines are

9  concerned, the suggested term of commitment would be one of

10  not less than 168 nor more than 210 months to be followed by

11  at least five years of supervised release and the possibility

12  of fines and other financial sanctions as elsewhere set out in

13  the report as to each defendant, including a special

14  assessment of $100, which would be due in each case.

15        I'm also aware, however, that the United States has

16  filed as to each of these defendants a motion for downward

17  departure under Section 5K1 of the guidelines on the basis of

18  substantial assistance to the United States previously

19  rendered by both of these defendants, and the United States

20  suggests in its motion as to each of them that he should

21  receive a three-level reduction.

22        I have reviewed those motions and the brief

23  memoranda supported by the government -- or offered by the

24  government as support for the motion, I should say; and it

25  appears that both motions should be granted and the defendants

1    afforded a downward departure of three offense levels.

2              That would bring the case as to both of them to

3    offense level 32, criminal history category one, as to which

4    the sentencing table would prescribe a term of commitment of

5    not less than 121 nor more than 151 months to be followed by a

6    term of supervised release and the financial sanctions as

7    previously mentioned.

8              So given those findings and conclusions, counsel,

9    I'll hear from you now in allocution concerning the sentence

10   to be imposed.

11             Who wishes to be heard first?

12             MR. DENARO:  I'm happy to go first.

13             THE COURT:  All right.

14             MR. DENARO:  If it please the Court.  May I

15   approach the podium?

16             THE COURT:  Please do, yes.

17             MR. DENARO:  Thank you.

18             THE COURT:  Mr. Denaro.

19             MR. DENARO:  Good morning, Your Honor.

20             This has been a long and difficult legal process

21   for my client, which began in 2007, May of 2007, when he was

22   arrested on a provisional warrant in Colombia and brought to

23   the maximum security prison called Combita.

24             I'm not sure if Your Honor has had an opportunity

25   to review the memorandum which I filed.  We are requesting a

1  variance from this Court.

2          My client was in Combita for about 16 months.  And

3  I know that the Court is aware because the conditions of

4  Combita and the conditions of confinement in Combita have been

5  well-known and have been well-publicized both in -- reported

6  in circuit court cases, in the Eleventh Circuit, as well as

7  articles written by the State Department as well as Amnesty

8  International, which I attached to my memorandum.

9          And basically what those cases and what those

10 reports describe are harsh and inhumane treatment, and that is

11 the treatment which my client received when he was in jail in

12 Colombia.

13         You know, the -- the -- the prison is set,

14 Your Honor, high in the Andes Mountains, about 11,000 feet, so

15 it's obviously difficult to breathe.  It's cold.

16         They sleep in the cold.  The food is oftentimes

17 moldy.  And it's wet and bitter.  And this is what he was

18 exposed to for the time where he was -- when he was in

19 Colombia awaiting extradition to the United States.

20         I don't want to belabor the issues that I wrote in

21 my memorandum.  I know the Court is familiar with them.  I

22 know that -- I think on occasion the Court has granted a

23 variance because of the conditions of Combita.

24         And so because of the extreme conditions that my

25 client faced while pending extradition, we would ask the Court

1    for a variance and to take into consideration that he spent,

2    I'm almost certain, 16 months while pending extradition to the

3    United States.

4        Once he got to the United States, Your Honor, he

5    began to cooperate immediately, both within his case and in

6    Washington, D.C., and in New York.

7        The government has suggested that a three-level

8    reduction is appropriate.  All I would say, Your Honor, and --

9    and all I would ask for is you to consider reducing his

10   sentence by one additional level.

11       I'm not sure if the Court has received a copy.  I

12   hope the Court has received a copy and had the opportunity to

13   review a letter which was written by a special agent by the

14   name of Remedio Viola.  And I don't want to review the whole

15   letter with Your Honor, but I would just direct the Court to

16   paragraph four --

17       THE COURT:  Just for the record, Mr. Denaro, I have

18   received that and have read it and have also reviewed your

19   memo in the matter.

20       MR. DENARO:  When you read the letter, it -- it's

21   obviously disturbing what has happened, but it is a testament

22   to Mr. Villarreal's assistance to the United States, but --

23   but I would just direct the Court to paragraph four on page

24   two where Mr. Viola explains that this man Patino, whose

25   nickname is Papimoro (phonetic) -- who, by the way, Your

1  Honor, is probably the worst and most violent person who has

2  ever been extradited to the United States.  He's killed

3  hundreds and hundreds of people, according to witness

4  testimony.

5          And he even hired someone to come from Spain to

6  travel to the United States to assassinate the lead prosecutor

7  against him by the name of -- her name is Bonnie Clapper --

8  and as well as Remedio Viola.  He did this as retribution for

9  them prosecuting him.

10          So I would ask -- what -- I would suggest also that

11  this man is capable of -- of physical threat and poses a

12  physical threat to both Mr. Villarreal and his family for

13  Mr. Villarreal's cooperation against him.

14          So that really concludes my argument.  In summary,

15  Your Honor, I'm asking for a variance because of the harshness

16  of the conditions in Combita and an additional level because

17  of the real physical threat that I believe my client faces as

18  a result of his cooperation against this individual.

19          Thank you.

20          THE COURT:  All right.  Thank you, Mr. Denaro.

21          Mr. Villarreal, do you have anything you wish to

22  say to me directly and personally in mitigation of the

23  sentence that I must impose in your case?

24          DEFENDANT MIGUEL VILLARREAL-ARCHILA:  No, sir.

25          THE COURT:  All right.

1          Mr. Barzee?

2          MR. BARZEE:  Thank you, Your Honor.

3          Mr. Torregrosa, of course, has been under the same

4  conditions as Mr. Villarreal and has received similar types of

5  threats against his family as a result of the cooperation.

6          I have failed to file something with the Court, but

7  I can relate to the Court that his family has been contacted

8  in Colombia and in Barranquilla and has received direct

9  threats as a result of the cooperation that Mr. Torregrosa has

10 given to the United States government in the case in

11 Washington, D.C.

12         In addition to that, I think that it's important

13 for me to note that the time that Mr. Torregrosa spent in the

14 prison conditions in Colombia was greater than the time that

15 was spent by the other co-defendants in the case.

16         He actually spent an extra year, which was one of

17 the reasons why it was important for me to get that May 2006

18 date correct.

19         So he actually suffered under those conditions for

20 approximately a hundred percent more than everyone else in the

21 case by virtue of being the first person to be arrested and

22 the last person to be extradited.  So I would ask the Court to

23 consider the length of time that he had to spend under those

24 conditions.

25         And the final thing that I would point out to the

1    Court, as was pointed out correctly in the presentence report,

2    is that Mr. Torregrosa had some health difficulties.

3              And as a result of those health difficulties in

4    Combita, his -- his migraines and his need for medication,

5    which he did not receive -- he actually had a very difficult

6    time once he got to the United States to the point where --

7    and I don't have the medical records -- but I can tell you, as

8    an officer of the Court, his -- his head actually, sort of,

9    blew up like a pumpkin at one point.  It was incredible to

10   see.

11             The man has suffered as a result of the conditions

12   in Combita.  He, thank God, has gotten the medical care he's

13   needed here in the United States.  I just thought it would be

14   important for me to note that to the Court.

15             Thank you, Your Honor.

16             THE COURT:  All right.  Thank you, Mr. Barzee.

17             Mr. Torregrosa, do you have anything you wish to

18   say to me directly and personally in mitigation of sentence?

19             DEFENDANT MANUEL ENRIQUE TORREGROSA-CASTRO:  No.

20             THE COURT:  Ms. Savell, do you have any remarks to

21   make for the United States?

22             MS. SAVELL:  Yes, Your Honor.  Thank you.

23             As Your Honor knows, this case is the last of

24   several that have been made as a result of an investigation by

25   the Lake County Sheriff's Office task force officer at the

1  time, Jerry Montalvo, who is here today.

2          In this particular case, Your Honor, all of the

3  defendants that were extradited, were extradited from

4  Colombia, and each of those defendants spent time in Combita

5  as well.

6          I did want to point that out to the Court, because

7  in considering whether or not to grant any type of variance

8  because of the conditions in Combita, the other defendants in

9  this case, who have already been sentenced before Your Honor,

10 were held in the same location, many for the same period of

11 time, under the same conditions before being extradited here

12 to the United States.  So I don't really think that that is a

13 basis by which the Court should grant or vary from the

14 guideline range.

15         With regard to the defendant Torregrosa-Castro, I

16 know his counsel has mentioned that he stayed in Combita

17 longer than the other defendants, and I would just point out

18 for the Court that the defendant, Mr. Torregrosa-Castro, was

19 in custody in Colombia on Colombian charges.  Our warrant was

20 not issued until May 3rd of 2007.

21         The year that he spent in there prior to that, he

22 was charged with related co-defendants that also were

23 extradited.  I believe he was charged along with Amilcar

24 Barros-Gomez.

25         But those charges weren't -- he wasn't held for two

1  years basically on our warrant.  That's the reason that he was

2  in there, because he had other charges pending in Colombia.

3          With regard to the cooperation of the defendants, I

4  know that my memorandum was somewhat brief, and I did just

5  want to give the Court a little more information about that.

6          These defendants began to cooperate while they were

7  in Combita.  They spoke with the case agent.  And when they

8  came here to the United States, they continued their

9  cooperation.

10          With regard to Mr. Villarreal-Archila, as

11  Your Honor knows from the review of the memorandum, the

12  defendant was cooperating in a case that prosecutors up in

13  Washington with the Narcotics and Dangerous Drugs Section up

14  there were -- were prosecuting.

15          The lawyers from Washington came down and proffered

16  Mr. Villarreal-Archila back in the fall of 2009.  The trial

17  was then set for sometime in June of 2010 with regard to

18  individuals that he was involved with while over in Colombia,

19  co-conspirators that he had information about with regard to

20  the manufacture of cocaine and the way that the cocaine was

21  transported and distributed.

22          His information was of assistance to the

23  prosecutors up in Washington.  They advised the defendant's

24  attorney that Mr. Villarreal-Archila was willing to testify

25  and would testify at trial, if necessary; and the attorneys in

1  Washington believe that that was -- impacted greatly the

2  defendant's decision to plead guilty.  And so

3  Mr. Villarreal-Archila did not actually have to testify, but

4  he was willing to do so.

5          And then, of course, Your Honor knows about his

6  cooperation in the Eastern District of New York as well based

7  upon the letter that Your Honor read from the agent up there.

8          I believe, Your Honor, that in looking at

9  Mr. Villarreal-Archila's cooperation that a three-level

10 departure is an appropriate departure, and I would ask the

11 Court not to grant any additional departure by way of the

12 cooperation.

13         I think that the three-level departure accurately

14 reflects his willingness, what he did to cooperate, and that

15 it's an appropriate departure.

16         I would also point out for the Court that I have

17 been in contact with the prosecutor from the Southern District

18 of Florida who has advised me that he has a case pending right

19 now -- I believe there's four individuals that are awaiting

20 extradition in Colombia for -- in that particular case the

21 defendant, Mr. Villarreal-Archila, would be a potential

22 witness in that case if those defendants -- when those

23 defendants are extradited and if they were to proceed to

24 trial.

25         The case against those individuals in the Southern

1   District was made without the cooperation of the defendant

2   Villarreal-Archila, but he would be a potential witness.  And

3   I just wanted to point that out to the Court, so Your Honor

4   would know that potentially there could be a Rule 35

5   possibility down the road.

6             So with regard to the defendant

7   Mr. Villarreal-Archila, I would ask the Court to sentence him

8   to the midrange of the guideline range with the three-level

9   departure, because I believe that that's an appropriate

10  sentence given his involvement in this offense, the amount of

11  cocaine that was involved and his cooperation.

12            With regard to defendant Torregrosa-Castro,

13  Your Honor, he, likewise, began to cooperate while in Colombia

14  awaiting extradition and continued that cooperation once he

15  came to the United States.

16            Mr. Torregrosa-Castro, likewise, cooperated with

17  prosecutors up in Washington; and he, in fact, was writted up

18  there to testify.

19            He met with the prosecutors.  They determined to

20  use him in a suppression hearing, and he did testify in a

21  suppression hearing up there with regard to individuals from

22  Colombia that had manufactured and distributed cocaine.  They

23  had laboratories and collected taxes from the various lab

24  operators in Colombia.

25            After his testimony at the suppression hearing,

those individuals ultimately pled guilty, and so

Mr. Torregrosa-Castro was not needed to testify at trial.  But

the prosecutor in Washington did advise me that he believed

that Mr. Torregrosa's testimony at the suppression hearing was

of assistance to the United States.

Your Honor, I believe that in looking at

Mr. Torregrosa-Castro's -- his cooperation and his level of

involvement in this offense, that I would ask the Court,

likewise, to sentence him to the midrange of the guideline

range.  I think that that would be an appropriate sentence

given the amount of cocaine involved in this case and his role

within this conspiracy while also recognizing his cooperation.

So for all of those reasons, Your Honor, I would

ask the Court to deny the defendant's motion for an additional

one-level departure for the cooperation and not to vary from

the guideline range.

Thank you.

THE COURT:  All right.  Thank you, Ms. Savell.

MR. BARZEE:  Your Honor?  I apologize.

Can I just point something out to the Court that I

think is important?

THE COURT:  You may.  Go ahead, Mr. Barzee.

MR. BARZEE:  I just want to make sure that --

that -- I agree with everything that Ms. Savell said

factually, except that I believe that the Court may have

1    granted variances for co-defendants in this case based on

2    conditions in Combita.  And I think we have to make the record

3    clear about that issue, if we can check with Probation.

4              MS. SAVELL:  Your Honor, if I could address that

5    just briefly?

6              THE COURT:  All right.  Go ahead, Ms. Savell.

7              MS. SAVELL:  When I spoke with the probation

8    officer prior to the hearing, he provided me with a chart with

9    regard to the co-defendants in this case that have been

10   previously -- or related cases, I should say -- not

11   co-defendants -- that were previously sentenced before the

12   Court.

13             In one particular case, Your Honor did consider --

14   by way of granting a four-level downward variance, Your Honor

15   did consider, among other things, the conditions under which

16   this defendant was held in pretrial detention in Colombia.

17   That was the defendant Hector Fabio Garcia-Vengohechea who was

18   a co-defendant to these defendants and was sentenced earlier.

19             In his particular case he was at a guideline range

20   of 135 to 168 months.  He did not receive a substantial

21   assistance motion, and Your Honor granted a four-level

22   variance to reflect his willingness to cooperate.  And

23   Your Honor indicated that, but for his limited role in the

24   offense, his cooperation did not rise to the level of a 5K

25   motion by the government.

1          Secondly, Your Honor considered the parity with

2    respect to the sentences imposed upon the other defendants who

3    participated in the offense and, thirdly, the conditions in

4    Combita.

5          That is the only defendant, Your Honor, in which

6    you considered that as a basis for variance, and I would just

7    point out that in this defendant -- in that defendant's

8    particular case, it wasn't the only reason that Your Honor

9    considered in granting a variance.

10          THE COURT:  And what sentence did I impose in that

11    particular case?  The chart I'm looking at doesn't show the

12    sentence, I believe.

13          MS. SAVELL:  Ninety-six months, Your Honor, on

14    December 17th of 2009.  The defendant was Hector Fabio

15    Garcia-Vengohechea.

16          MR. BARZEE:  And with the Court's permission, if I

17    might?  Thank you.

18          I -- I think that's accurate.  So in addition to

19    being similarly situated with the Combita issue on top of

20    that, Mr. Torregrosa was writted to Washington, D.C., was held

21    in special housing, solitary confinement, actually testified

22    in court at a suppression hearing.  And as a result of his

23    testimony at that suppression hearing, the case was resolved,

24    and the individuals that were standing trial in Washington

25    ended up pleading guilty.

1       So I'm just suggesting to the Court that the Court

2   might want to consider Mr. Torregrosa's health, the conditions

3   in Combita similar to the co-defendant, and then add on

4   something for that cooperation in Washington where he had a

5   case resolved as a result of him being writted to Washington,

6   spending time in special housing, solitary confinement,

7   actually testifying at a suppression hearing.  Thank you very

8   much, Your Honor.

9       THE COURT:  All right.  Thank you, counsel.

10      Well, I would start with the observation, of

11  course, that the sentencing guidelines are still an important

12  factor to be considered in the formulation of a sentence in a

13  criminal case but, of course, are no longer binding -- they

14  are advisory -- but should be taken into consideration

15  together with the other factors enumerated in the governing

16  statute, which is Section 3553 of Title 18.

17      I have determined during the course of this hearing

18  that, absent departure, pursuant to the motion of the

19  government under 5K1 or otherwise, the defendants would be

20  subject to a sentencing range under the guidelines of as much

21  as 168 to up to 210 months.

22      And the case is, of course, a very serious case

23  involving the importation over time by these defendants,

24  according to the presentence report, of hundreds of kilos of

25  cocaine.

1          I've already determined that the motion of the

2     United States for a downward departure should be granted

3     which, again, for purposes of the guidelines takes the case to

4     offense level 32, criminal history category one, with a

5     sentencing range of 121 to 151 months, which is a considerable

6     advantage to the defendants.  It reduces their sentence by

7     something on the order of four years or somewhere between 25,

8     I believe, and 30 percent of the sentence that would otherwise

9     be imposed.

10          So they've already been granted substantial

11     consideration, it seems to me, for the cooperation which they

12     have rendered to the United States.  And in the case of at

13     least one of them, government counsel says there's a

14     possibility of a Rule 35 motion in the future.

15          If I should grant an additional level of departure

16     down to offense level 31, the sentencing range would overlap

17     that applicable to offense level 32, criminal history

18     category one, the range there being 108 to 135 months as

19     distinguished from 121 to 151 months, so that a sentence at

20     the mid or high range at offense level 31 would also be within

21     the range of offense level 32.

22          And given the seriousness of the offense, it seems

23     to me that a sentence that would fall within both of those

24     ranges grants considerable leniency to the defendants in view

25     of their cooperation while still takes into account, as it

1    must, the seriousness of the offense and would also serve the

2    other purposes or factors enumerated in the statute.

3            So considering those matters, it is now the

4    judgment and sentence of the Court in the case of the

5    United States against Manuel Enrique Torregrosa-Castro and in

6    the case of the United States against Miguel

7    Villarreal-Archila that each of those defendants should be and

8    is hereby remanded to the custody of the Bureau of Prisons for

9    commitment for a term of 130 months or until otherwise

10   discharged according to law, to be followed by a term of five

11   years' supervised release under the standing terms and

12   conditions of supervised release normally imposed in this

13   court.

14           I will waive the imposition of any fine or other

15   financial sanction in view of the substantial term of

16   commitment imposed.

17           I will, however, impose the special assessment of

18   $100 as to each defendant as required by the statute.

19           Each of the defendants is in custody and will,

20   therefore, be remanded to custody for the execution of the

21   sentence.

22           I do advise and caution each of them that he has

23   the right to seek appellate review of any adverse

24   determination that I may have made in this case by filing with

25   the clerk within 14 days a notice of appeal if he does wish to

1  seek appellate review, assuming that such review has not been

2  waived by the plea agreement.

3         And I further advise and caution both defendants

4  that, if he wishes to pursue an appeal and lacks the funds

5  with which to employ counsel for that purpose, he can apply to

6  the Court for consideration of the appointment of counsel

7  under the Criminal Justice Act.

8         I believe the government was obliged by the plea

9  agreement to move to dismiss the remaining count as to both

10  defendants, Ms. Savell.

11         MS. SAVELL:  Yes, Your Honor.  We would ask the

12  Court to do that at this time.

13         THE COURT:  That motion is granted, and the other

14  count of the Indictment is dismissed as to both defendants.

15         Does the government have any objections it wishes

16  to state to any ruling I've made during the course of this

17  hearing?

18         MS. SAVELL:  I have no objections, Your Honor, but

19  I would ask the Court to -- I believe that a preliminary order

20  of forfeiture was entered with regard to the defendant

21  Villarreal-Archila back on July 19 of this year, Document

22  Number 130, and would ask that that be made part of the

23  judgment and commitment order.

24         THE COURT:  All right.

25         See that that is done, Madam Clerk.

1       MS. SAVELL:  No objections otherwise, Your Honor.

2       THE COURT:  Pardon?

3       MS. SAVELL:  No objections.  I believe that was

4  your question.

5       THE COURT:  All right.

6       Mr. Denaro, do you have any objections you wish to

7  state or any other matter you wish to raise with the Court

8  concerning your client?

9       MR. DENARO:  No, Your Honor.

10      THE COURT:  Mr. Barzee?

11      MR. BARZEE:  None, Your Honor.  Thank you.

12      THE COURT:  All right.  Thank you.

13      Then we'll be in recess.

14      (Thereupon, the proceedings in this case for this

15  date were concluded at this time.)

16

17

18

19              C E R T I F I C A T E

20  I hereby certify that the foregoing is an accurate

21  transcription of the proceedings in the above-entitled matter.

22

23    S/Dennis Miracle                February 10, 2011

24  _____        _____

25      Dennis Miracle                        Date